IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JOHN POLTONOWICZ | CRIMINAL ACTION<br>NO. 07-52<br><br>RELATED TO<br>11-CV-1626 |

## OPINION

Slomsky, J.                                                                                                                                   February 5, 2013

## I. INTRODUCTION

Before the Court is Defendant John Poltonowicz's pro se Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence based on a claim that his counsel was ineffective at sentencing. (Doc. Nos. 158 and 161.)[1]

On February 15, 2008, a jury convicted Defendant of twenty-seven counts of conspiracy, aiding, assisting, and counseling the filing of false tax returns, mail and wire fraud, making false statements to a financial institution to obtain a loan, and making false statements to the Internal Revenue Service ("IRS"). (Doc. No. 117.) On June 10, 2008, Judge James T. Giles sentenced Defendant to forty-eight months imprisonment followed by three years of supervised release, to pay a fine of $10,000, a special assessment of $2,700, and restitution in the amount of $400,000. (Doc. No. 203 at 2.) Defendant appealed and the Third Circuit Court of Appeals affirmed the conviction and sentence. (Doc. No. 154.)

On January 3, 2011, the matter was re-assigned to this Court. (Doc. No. 156.) On March 8 and 21, 2011, Defendant sought relief under § 2255 based on a claim of ineffective assistance

---

[1] Defendant filed two separate 2255 motions, one typed (Doc. No. 158) and the other handwritten (Doc. No. 161). The motions are not identical, but both contain the same argument: ineffective assistance of counsel at sentencing. Therefore, for purposes of this Opinion, the Court will refer to them as one 2255 motion.

1

of counsel. (Doc. Nos. 158 and 161.) The matter was then referred to Chief United States Magistrate Judge Carol Sandra Moore Wells for a Report and Recommendation. (Doc. No. 162.)[2] On November 4, 2011, the Government filed its Response in Opposition. (Doc. No. 171.)

On August 16, 2012, Judge Wells recommended denial of the instant 2255 Motion without an evidentiary hearing. (Doc. No. 203.) On August 31, 2012, Defendant filed timely objections to the Report and Recommendation. (Doc. No. 207.)

For reasons that follow, the Court will approve and adopt Judge Wells' Report and Recommendation (Doc. No. 203) and deny Defendant's 2255 Motion (Doc. Nos. 158 and 161) without an evidentiary hearing. Moreover, a certificate of appealability will not be issued.

## II. FACTUAL BACKGROUND

On February 15, 2008, Defendant was convicted after an eight-day jury trial of violating 18 U.S.C. §§ 371, 1001, 1014, 1341, and 1343, and 26 U.S.C. § 7206(2). (Doc. No. 171 at 3-4.) Defendant's conviction was based mainly on the preparation of false tax returns for clients of Matrix Tax Service, Inc., Defendant's tax preparation business. (Id. at 3.)

On June 10, 2008, Defendant was sentenced. (Doc. No. 203 at 2.) Defendant represented himself at trial, but was represented by counsel, John R. Crayton ("Defense Counsel"), at sentencing. (Id.) At sentencing, the court stated that "[o]ne of the central disagreements pertains to the calculation of loss to the United States [for the filing of false tax returns] as prepared by the prosecution and [which] has been utilized by the probation officer in the preparation of the [pre-sentence] report." (Doc. No. 171-1 at 3-4.)

---

[2] Ordinarily, a Defendant's 2255 motion is handled entirely by the district court judge responsible for the underlying criminal case. Here, because Judge Giles — not this Court — was responsible for Defendant's criminal case, the 2255 Motion was referred to Chief Magistrate Judge Wells for a Report and Recommendation.

The Government presented evidence of the loss through IRS Agent James T. Morris ("Agent Morris"). (Doc. No. 171 at 4-5.) At trial, the evidence showed that Defendant had prepared approximately 25,000 tax returns, of which about 25% were fraudulent. (Id. at 4 n.2.) However, in calculating the tax loss for sentencing purposes, Agent Morris focused only on the 225 individual tax returns that were actually audited by the IRS Civil Division. (Id.) He reviewed each audited return, and included in the total those return items that "had the same characteristics of fraud that were found in the trial," which included "abusive charitable contributions or employee business expenses, inflated Schedule Cs, improper earned income tax credits, and separate filings for married couples." (Id. at 4-5 (internal quotations and citations omitted).) Agent Morris was not able to obtain all 225 IRS audit files, and therefore he had to make certain inferences in calculating the total loss, which were supported with "close correspondence between the audited returns and [Defendant]'s established pattern of conduct, and with the fact that all of the selected audited returns had been prepared by [Defendant] personally, [as well as] interviews of more than 50 of the 225 taxpayers whose audited returns were being considered." (Id. at 5 (citations omitted).) Agent Morris calculated the Government's total tax loss to be $419,853.20. (Id.)

Both prior to and at sentencing, Defense Counsel strenuously objected to the Government's loss calculation, arguing that not all of the returns Defendant prepared were fraudulent. (Id. at 5-6 (citations omitted).) Defense Counsel "submitted signed statements from several of [Defendant]'s clients which stated that they had bad experiences with the IRS, that their returns were accurate, or that [Defendant] had nothing to do with the false entries on their tax returns." (Id. at 6 (citation omitted).) On cross-examination, Defense Counsel challenged, among other things, Agent Morris' methodology by pointing out that he did not have audit files

3

for all 225 of the audited returns (Doc. No. 171-1 at 22-24); Defense Counsel questioned the manner in which Agent Morris' office conducted the audits (id. at 24-28); and he reiterated that Agent Morris did not interview all 225 individuals whose tax returns were audited and therefore the loss was based largely on assumptions (id. at 28-30, 33-36). Defense Counsel then argued, in relevant part, the following:

> Eventually, I was provided with audit files and also [Defendant] gave me discovery material. And I will concede that if you go through all of those materials and you match up those people who have actually, affirmatively said to the IRS there was a problem with the tax return, the problem resulted from the conduct of [Defendant], you will end up in an 80,000 to — more than 80,000 less than $200,000 range.
> . . . .
>
> What the government has done is they said, as Agent Morris has explained it, we just assumed that everybody that had an audit and everybody that had a contribution expense or unreimbursed business expense, this must be resulting from the fraud of [Defendant].
> . . . .
>
> When we pointed out to the government that they were making serious errors in these documents, and that people like [clients of Defendant], who had no business on there for that amount of money . . . [the Government] took out things.

(Id. at 40-41.)

After hearing the testimony of Agent Morris, and arguments from counsel for the Government and Defendant, the sentencing court stated the following:

> The Court credits the testimony of Agent Morris that the conservative estimate of the loss to the United States by reason of the conduct — criminal conduct of the [D]efendant is in excess of $400,000. And the Court finds that the loss is an amount in excess of $400,000. The modus operandi of the [D]efendant was laid out at trial, that included his grafting onto the Schedule Cs, the various numbers that he believed would work, that pattern was corroborated by witnesses . . . . As well by taxpayers who testified as to what happened when they went to see [Defendant]. . . . . The pattern and practice of the [D]efendant shows that with respect to certain kinds of claimed deductions that those numbers were way in excess of the national average, which suggested that it was

4

part of this modus operandi that those numbers came to be on those returns.

(Id. at 42-43.) Based on the accepted loss amount, and other sentencing factors, Defendant's Guidelines range was seventy-eight to ninety-seven months imprisonment. (Doc. No. 171 at 6 (citation omitted).) After consideration of the 18 U.S.C. 3553(a) factors, Defendant was sentenced to forty-eight months imprisonment followed by three years of supervised release, to pay a fine of $10,000, a special assessment of $2,700, and restitution in the amount of $400,000. (Doc. No. 171-1 at 61-66; Doc. No. 203 at 2.)

In the 2255 Motion, Defendant contends that Defense Counsel — who cross-examined Agent Morris — failed to effectively impeach the credibility of Agent Morris' tax loss calculation, which, he further argues, ultimately led to the imposition of an incorrect sentence. (Id. at 2-3.) The Court disagrees for reasons that follow.

## III. STANDARD OF REVIEW

Section 2255 provides, in relevant part:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a).

Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rules 72.1.I(b) and IV(b), a magistrate judge may file proposed findings and recommendations in a § 2255 case. In response, the challenger may file objections to the magistrate judge's report and recommendation that "specifically identify the portion of the [report and recommendation] to which the objection is made." 28 U.S.C. § 636(b)(1)(C); Local Rule 72.1.IV(b); Reid v. Lawler, No. 08-5674, 2010

WL 1186320, at *3 (E.D. Pa. Mar. 25, 2010). After the challenger files his objections, a district court judge will "make a de novo determination of those portions of the report . . . [and] may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1)(C). "[T]he normal practice of the district judge is to give some reasoned consideration to the magistrate's report before adopting it as the decision of the court." Henderson v. Carlson, 812 F.2d 874, 878 (3d Cir. 1987).

## IV. DISCUSSION

In the Report and Recommendation, Judge Wells concluded that Defense Counsel was not ineffective at sentencing because he challenged Agent Morris' tax loss calculation and methodology. The Court agrees.

The Supreme Court of the United States has held that a challenge based on ineffective assistance of counsel prevails only when a defendant demonstrates that counsel's performance (1) was deficient and (2) the deficient performance prejudiced the defendant. Strickland v. Washington, 466 U.S. 668, 688-89 (1984). The first prong — deficiency — requires that a defendant demonstrate that "counsel's representation fell below an objective standard of reasonableness." Id. at 688. A court compares counsel's challenged actions to prevailing professional norms. Id. This analysis defers to counsel's strategic discretion. Id. Accordingly, a court will "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. A challenger "must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy." Id. An attorney's strategy will not be held deficient if he chooses not to present an unmeritorious claim. Parrish v. Fulcomer, 150 F.3d 326, 328-29 (3d Cir. 1998). Nor does effective assistance of counsel require a "'cross-examination that is effective in whatever way, and to whatever extent,

6

the defense might wish.'" Rolan v. Coleman, 680 F.3d 311, 327 (3d Cir. 2012) (quoting Delaware v. Fensterer, 474 U.S. 15, 20 (1985) (per curiam)).

Defendant's first objection to the Report and Recommendation is as follows:

> To impeach a witness's credibility, for example, is to show that the witness is not believable. The Magistrate's specious claim that [Defense Counsel] did challenge Agent Morris's credibility [is based on the] cit[ation] of [an] exchange between [Defense Counsel] and Morris concerning missing client files. This exchange offers no evidence whatsoever that [Defense Counsel] attempted to show Agent Morris was "not believable."
>
> The paramount issue here is that [the sentencing court] believed Agent Morris's false testimony only because [Defense Counsel] failed to challenge Agent Morris's credibility with the available evidence and arguments.

(Doc. No. 207 at 2-3.)

Based on the sentencing transcript, Judge Wells concluded that Defense Counsel challenged Agent Morris' total tax loss and calculation methodology. (Doc. No. 203 at 4-6.) In support of this conclusion, the Report and Recommendation does provide detail of one exchange between Defense Counsel and Agent Morris regarding the lack of support for all 225 individual audits done by the IRS. (Id.) This single exchange was not, however, the only attack Defense Counsel made on Agent Morris' tax loss calculation.

As stated above, Defense Counsel also submitted signed statements from some of Defendant's former clients to show that not all tax returns prepared by Defendant contained false information; he challenged the manner in which the IRS conducted the audits; he confirmed that Agent Morris did not interview all 225 individuals who were audited; and he made clear to the sentencing court that Agent Morris was required to make multiple assumptions to arrive at the Government's total tax loss. The record clearly shows an attempt by Defense Counsel to

7

undermine the credibility of Agent Morris and his calculations,[3] and, under Strickland, the manner in which he decided to make this point was within his professional discretion — not Defendant's. Therefore, the Court, in agreement with Judge Wells, finds that Defense Counsel's cross-examination of Agent Morris was not deficient.

Because Defendant failed to demonstrate that Defense Counsel's performance in cross-examination was deficient, this Court is not required to address the second prong of prejudice. See id. at 697 (holding both prongs required to prove ineffectiveness).[4]

## V. CONCLUSION

For the foregoing reasons, this Court will approve and adopt Judge Wells' Report and Recommendation (Doc. No. 203) and deny the 2255 Motion (Doc. Nos. 158 and 161). A Certificate of Appealability will not be issued.

An appropriate Order follows.

---

[3] Throughout Defendant's filings he has accused Agent Morris and the prosecutor of lying during the sentencing proceedings. (See, e.g., Doc. No. 207 at 2.) As recently as January 23, 2013, Defendant stated in a letter to the Court that "the government makes no effort to deny that IRS Agent James Morris lied repeatedly or that [the prosecutor] had known that he was introducing false testimony." There is nothing in the record, nor has Defendant pointed to any evidence, to support such statements.

[4] Judge Wells did address the prejudice prong, noting that Defendant's forty-eight month sentence was substantially less than the seventy-eight to ninety-seven month sentence recommended by the Sentencing Guidelines, and therefore concluded that Defendant was not prejudiced by Defense Counsel's attack on the $400,000 loss amount, which Defendant claims was deficient. (Doc. No. 203 at 6-7.) The Third Circuit has held, however, that "'given the importance of a correct Guidelines calculation both to the sentencing process that district courts are required to conduct and to our ability to carry out reasonableness review, the use of an erroneous Guidelines range will typically require reversal under 18 U.S.C. § 3742(f).'" United States v. Castro, No. 11-3893, 2013 WL 69214, at *14 (3d Cir. Jan. 8, 2013) (quoting United States v. Langford, 516 F.3d 205, 215 (3d Cir. 2008)). Therefore, the Court will not adopt Judge Wells' analysis of the prejudice prong, but will, as stated above, adopt the conclusion that Defense Counsel was not ineffective at sentencing and that despite his strategic efforts aimed at advancing Defendant's cause, the Guidelines were properly calculated. See Mack v. Folino, 383 F. Supp. 2d 780, 792 (E.D. Pa. 2005) (adopting in part and denying in part a magistrate judge's report and recommendation).